Kris A. McLean
Tyson A. McLean
Kris A. McLean Law Firm, PLLC
PO Box 1136
Florence, Montana 59833
Phone: 406-214-1965
kris@krismcleanlaw.com

*Attorneys for Plaintiff Kevin Washington*

| | |
|---|---|
| KEVIN WASHINGTON,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW BRENT GOETTSCHE,<br><br>Defendant. | Cause No. CV-20-2-BU-BMM-KLD<br><br><br>**PLAINTIFF'S SUPPLEMENTAL RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION** |
| FX SOLUTIONS, INC.<br><br>Plaintiff,<br><br>vs.<br>MATTHEW BRENT GOETTSCHE,<br><br>Defendant. | Cause No. CV-20-03-BU-BMM-KLD |

COMES NOW Plaintiff, by and through his attorney of record, Kris A. McLean, and responds to Defendant's Opposed Motion to Stay Proceedings and Defendant's Motion to Compel Arbitration with court authorized supplemental briefing.

## Introduction

In the CryptoWatt Investment Partners, LLC's (hereinafter "CryptoWatt") operating agreement, Mr. Washington and Defendant agreed that the liability for claims against the Managing Member (Defendant) for *fraud, deceit, gross negligence, or willful misconduct,* be determined by "a court of competent jurisdiction" (*i.e.* this Court). (Doc. 9-1, *Defendant's* Ex. A, Sec. 5.04 and 5.06(b)) (emphasis added). Mr. Washington filed claims against Defendant for his knowing or intentional *Breaches of his Fiduciary Duty* and *Fraud.* (Doc. 26). Mr. Washington did not agree to submit these claims to arbitration. In fact, the operating agreement specifically exempts Mr. Washington's claims from arbitration and directs the filing of his claims to a "court of competent jurisdiction." Accordingly, the Court should deny Defendant's motions and allow this case to proceed in this Court.

## Procedural History

On December 26, 2019, Mr. Washington filed his complaint alleging fraud and breach of fiduciary duties against Defendant in the Montana Second Judicial District Court. (Doc. 1-1). On January 7, 2020, the day before the state court receiver hearing, Defendant removed this case to the U.S. District Court, District of Montana based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1). On January 8, 2020, Mr. Washington filed an Emergency Motion to Appoint

Receiver and Request for Hearing before this Court. (Doc. 5). This Court set the emergency receiver hearing on January 10, 2020. (Doc. 7). The night before the January 10, 2020 hearing, Defendant filed a motion to compel arbitration and requested that the Court consider this issue prior to the Receivership hearing. (Doc. 8). Mr. Washington filed a response to Defendant's motion to compel arbitration in the early morning of January 10, 2020. (Doc. 10). The Court proceeded with the Receiver hearing and briefly inquired about Defendant's motion to compel arbitration. (Doc. 12). The Court appointed the Receiver on January 13, 2020. (Doc. 22).

On February 7, 2020 Defendant filed a motion to stay proceedings primarily arguing for his Fifth Amendment Rights. (Docs. 37–38). Mr. Washington responded to Defendant's motion to stay on February 21, 2020 and fully briefed the matter relying on *Keating v. Office of Thrift Supervision,* 45 F.3d 322 (9th Cir. 1994) and its progeny. (Doc. 40). Before Defendant's reply brief became due, on March 3, 2020, Mr. Washington and Defendant stipulated to stay proceedings in order to focus on negotiation. (Doc. 42). That same day, the Court ordered the case to be stayed until April 22, 2020. (Doc. 43). On April 23, 2020 Defendants filed a reply brief in support of his Motion to Stay Proceedings. (Doc. 62). That same day, during the Court's status conference, the Court authorized Mr. Washington to file a

supplemental response to Defendant's motion to stay in order to address Defendant's arbitration arguments raised in Defendant's reply brief.

## Legal Standard

### a. Arbitration

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA, which governs petitions to compel arbitration, provides that

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction...The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement...

*Samson v. Nama Holdings LLC*, 637 F.3d 915, 922 (9th Cir. 2010) (citing 9 U.S.C. § 4.).

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (internal quotations omitted) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44, 115 S.Ct.

1920, 131 L.Ed.2d 985 (1995) (explaining that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration").

A district court must answer affirmatively both "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue" before the court is required by the FAA to enforce the arbitration agreement in accordance with its terms. *Samson,* 637 F.3d at 924–25 (quoting *Chiron Corp. v. Ortho Diagnostic Systems, Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000) (citations omitted).[1]

In deciding these questions, federal courts must "place [an] arbitration agreement on equal footing with other contracts." *E.E.O.C. v. Waffle House*, 534 U.S. 279, 293, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Thus, "[t]o evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores*, *Inc.*, 328 F.3d 1165, 1170 (9th Cir.2003) (citing *First Options of Chicago,* 514 U.S. at 944.)

---

[1] Mr. Washington only disputes "(2) whether the [arbitration] agreement encompasses the dispute at issue." *Samson,* 637 F.3d at 924–25 (quoting *Chiron Corp. v. Ortho Diagnostic Systems, Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000) (citations omitted).

### b. Contract Interpretation

As Defendant pointed out, the CryptoWatt operating agreement is governed by Delaware law. (Doc 9, 4; *see also* Doc. 9-1, *Defendant's* Ex. A, Sec. 11.01). "Delaware adheres to the objective theory of contract interpretation" which requires the court to examine the "most objective indicia of that intent: the words found in the written instrument." *Ross v. Institutional Longevity Assets LLC,* Civil Action No. 2017-0186-TMR, 8 (Del. Ch. 2019) (quoting *Dittrick v. Chalfant,* 948 A.2d 400, 406 (Del. Ch. 2007) (stating "[a]s part of this initial review, the court ascribes to the words their common or ordinary meaning, and interprets them as would an objectively reasonable third-party observer."). "Standing in the shoes of an objectively reasonable third-party observer, if the court finds that the terms and language of the agreement are unmistakably clear, then the court should look only to the words of the contract to determine its meaning and the parties' intent." *Ross v. Institutional Longevity Assets LLC,* Civil Action No. 2017-0186-TMR, 8 (Del. Ch. 2019) (citing *Dittrick v. Chalfant,* 948 A.2d 400, 406 (Del. Ch. 2007).

### Argument

Defendant disregards the clear language of the arbitration clause at issue in this case and instead espouses general propositions of arbitration law to summarily conclude that Mr. Washington should be compelled to arbitrate his claims. Defendant simply asserts "[b]y its terms, the Operating Agreement requires the

parties to arbitrate "any unresolved controversy or claim arising out of or relating to this Agreement." (Doc. 9, 6; *see also* Doc. 62, 3 stating "Washington's claims indisputably 'arise out of or relate to' the Operating Agreement.). However, "[i]n the Ninth Circuit, the exact language used in an arbitration clause is crucial." *Galilea, LLC v. Agcs Marine Ins. Co.*, CV 15-84-BLG-SPW, 8 Apr. 5, 2016 (D. Mont. 2016). Defendant's arguments lack any substantive analysis of the *language* of CryptoWatt's operating agreement executed between Mr. Washington and Defendant.

Here, the arbitration clause has broad and clear *exceptions* to arbitration that Defendant strives to ignore. For example, in appointing the Receiver in this case, the District Court tacitly agreed with Mr. Washington that Secs. 11.02(i) and 12.10 of the operating agreement except equitable remedies from the operating agreement's arbitration clause. (*See Plaintiff's Brief in Opposition to Defendant's Motion to Arbitrate,* Doc. 10, 3) Now, even Defendant seems to grudgingly agree that this Court's consideration of and granting Mr. Washington's motion to appointment a Receiver was an allowed exception to the operating agreement's arbitration clause. (Doc. 62, 2) (stating "the receivership is not inconsistent with compelled arbitration.").

Like the equitable remedy of appointing a Receiver, CryptoWatt's operating agreement contains other unambiguous and powerful exceptions from arbitration

for the very claims asserted in Mr. Washington's complaint: fraud, deceit, and willful misconduct.

### 1. Mr. Washington and Defendant Agreed that Liability for Claims Against the Managing Member for *Fraud, Deceit, Gross Negligence, or Willful Misconduct,* be Determined by "a Court of Competent Jurisdiction."

Sections 11.02(i), 5.04 and 5.06(b) of CryptoWatt's operating agreement set forth the Parties' agreement that *"*a court of competent jurisdiction" can determine liability arising from the Managing Member's "*fraud, deceit, gross negligence, or intentional breach of [his] obligations hereunder."* (Doc. 9-1, *Defendant's* Ex. A, sec. 11.02, 5.04 and 5.06(b)) (stating, [the Managing Member is entitled to indemnity]"except for any liability that a court of competent jurisdiction shall have ultimately determined to have arisen from such Indemnified Party's fraud, willful misconduct, gross negligence or intentional breach of its obligations hereunder…" *Id.* at sec. 5.06(b)). Mr. Washington brought claims against Defendant in his capacity as the Managing Member of Cryptowatt for knowing or intentional breaches of Defendant's fiduciary duties and fraud. Therefore, Sections 11.02(i), 5.04 and 5.06(b) of CryptoWatt's operating agreement permit Mr. Washington's claims to be determined by this Court.

Instead of acknowledging the arbitration clause's broad exceptions, Defendant mischaracterizes the arbitration clause here and attempts to analogize it with other cases claiming, "[t]he Ninth Circuit routinely enforces broad,

unambiguous arbitration provisions similar to the one in CryptoWatt's Operating Agreement." (Doc. 9, 6). But the arbitration clause at issue here is nothing like those that Defendant states are similar and enforceable.

In *Chiron Corp. v. Ortho Diagnostic Sys.,* the court described the arbitration clause as "broad and far reaching" as the clause stated "Any dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this Agreement shall be settled by binding Alternate Dispute Resolution ("ADR") in the manner described below." 207 F.3d 1126, 1131 (9th Cir. 2000). In *Quackenbush v. Allstate Ins. Co.*, the Court found that each arbitration clause at issue contained different language, but all were broad in scope. 121 F.3d 1372, 1380 (9th Cir. 1997).

> For example, one provides: if any dispute shall arise between Mission and Allstate with reference to the interpretation of this Agreement or their rights with respect to any transaction involved ... such dispute shall be submitted to arbitration." Another provides: "In the event of differences arising between the contracting parties with reference to any transactions under this Agreement, such differences must be submitted to arbitration.

*Id.*

CryptoWatt's operating agreement includes an arbitration clause unlike any of the cases Defendant cites. Section 11.02(i) is a broad exception to the arbitration clause that requires the Court to look at all the other provisions in CryptoWatt's operating agreement "to resolve those disputes—but only those disputes—that the

parties have agreed to submit to arbitration". *First Options of Chicago, Inc.*, 514 U.S. at 943–44. This Court should find that Section 5.04 and 5.06(b) in CryptoWatt's operating agreement—*as (i) otherwise provided in this Agreement*—allow Mr. Washington's claims to be determined by this court. (Doc. 9-1, *Defendant's* Ex. A, Sec. 11.02(i); 5.04 and 5.06(b)).

### 2. Section 12.10 Excepts remedies "at law or in equity" from the Arbitration Clause.

While not making a direct ruling on the issue, by granting Mr. Washington's emergency motion to appoint a Receiver, the District Court tacitly determined that sections 11.02(i) and section 12.10 of the CryptoWatt operating agreement except equitable remedies from the operating agreement's arbitration clause. Similarly, this Court should determine that Section 12.10 of CryptoWatt's Operating Agreement excepts Mr. Washington's claims of fraud and knowing and intentional breaches of fiduciary duties. Section 12.10 provides in pertinent part,

> in addition to any other remedy to which the parties hereto are entitled at *law* or in equity…each party hereto shall be entitled…to enforce specifically the terms and provisions hereof in *any federal or state court* to which the parties have agreed hereunder to submit to jurisdiction. (emphasis added)

(Doc. 9-1, *Defendant's* Ex. A, Sec. 12.10)[2]

---

[2] *compare to* Section 3.10(e) stating "[a]ccordingly, it is agreed that each of the Company and the Members shall be entitled to an injunction to prevent breaches of this Agreement, and to specific enforcement of this Agreement and its terms and provisions in any action instituted in any court of the United States or any state having subject matter

In essence, Defendant argues that every dispute between members of the CryptoWatt operating agreement must and can only be resolved through arbitration. A fair and plain reading of the entire operating agreement reveals many disputes and claims that Mr. Washington and the defendant agreed can be submitted to a Court of competent jurisdiction. Section 12.10 and the other provisions in CryptoWatt's operating agreement cited herein are provisions that the Court should examine to determine "whether the [arbitration] agreement encompasses the dispute at issue." *Samson,* 637 F.3d at 924–25 (quoting *Chiron Corp. v. Ortho Diagnostic Systems, Inc.,* 207 F.3d 1126, 1130 (9th Cir.2000) (citations omitted). Based on the plain language of Section 12.10[3] the Court should determine that the arbitration clause does not encompass Mr. Washington's claims and they are properly presented to this Court for determination.

---

jurisdiction." This section of the CryptoWatt operating agreement recognizes and excepts additional claims from the arbitration clause.

[3] Defendant may argue in his reply that the Court should consider the headings in its interpretation of CryptoWatt's operating agreement. That would be an incorrect assertion pursuant to Section 12.08 of CryptoWatt's operating agreement that provides "Headings or captions of the various subdivisions of this Agreement are inserted *only* as a matter of convenience and for reference, and in no way define, *limit,* extend or describe the scope of this Agreement or the intent of any provision hereof." (Doc. 9-1, *Defendant's* Ex. A, Sec. 12.08) (emphasis added). Thus, per the plain language of CryptoWatt's operating agreement, the headings have no force on the intent of the provision and should not be considered by the Court. *See Ross v. Institutional Longevity Assets LLC,* Civil Action No. 2017-0186-TMR, 8 (Del. Ch. 2019) (quoting *Dittrick v. Chalfant,* 948 A.2d 400, 406 (Del. Ch. 2007).

## Conclusion

Mr. Washington's complaint against Defendant alleges knowing or intentional breaches of Defendant's fiduciary duties and fraud. CryptoWatt's operating agreement contains an arbitration clause with a broad exception that requires arbitration of claims, "except as (i) otherwise provided in this Agreement." Sections 5.04, 5.06(b), and 12.10 of the agreement allow Mr. Washington to pursue claims of fraud, deceit, gross negligence and willful misconduct in this Court. Mr. Washington did not agree to submit his claims to arbitration and "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam,* 537 U.S. at 83, (internal quotations omitted) (quoting *United Steelworkers of America,* 363 U.S. at 582) *see also First Options of Chicago, Inc.,* 514 U.S. at 943–44. This Court should deny the Defendant's motions to compel arbitration and to stay proceedings.

DATED this 30th day of April 2020.

        /s/ Kris A. McLean
        Kris A. McLean
        Kris A. McLean Law Firm, PLLC
        Attorney for Plaintiff
        Kevin Washington

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that **Plaintiff's Response Brief in Opposition to Defendants' Motion to Stay Proceedings and Request for Hearing** is drafted with proportionately spaced Times New Roman 14 points typeface, is double-spaced, except where citation requires otherwise and in footnotes; and the word count, calculated by Microsoft Word for Office 365, is **2,561** words long, excluding Caption, Certificate of Service, and Certificate of Compliance.

DATED this 30th day of April 2020.

/s/ Kris A. McLean
Kris A. McLean
Kris A. McLean Law Firm, PLLC
Attorney for Plaintiff
Kevin Washington

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of April 2020, the foregoing document was served on the following individuals by ECF filing:


John E. Smith
Smith & Stephens, P.C.
315 West Pine Street
Missoula, Montana 59802
john@smithstephens.com

Nick K. Brooke
Smith & Stephens, P.C.
315 West Pine Street
Missoula, Montana 59802
nick@smithstephens.com

Robert L. Sterup
Brown Law Firm, P.C.
315 North 24th Street
P.O. Drawer 849
Billings, Montana 59103
rsterup@brownfirm.com


/s/ Kris A. McLean
Kris A. McLean
Kris A. McLean Law Firm, PLLC
Attorney for Plaintiff
Kevin Washington