IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

|  |  |
|---|---|
| KEVIN WASHINGTON,<br><br>              Plaintiff,<br><br>vs.<br><br>MATTHEW BRENT GOETTSCHE,<br><br>              Defendant. | CV 20-2-BU-BMM-KLD<br>(lead case)<br><br>(consolidated with)<br>CV 20-3-BU-BMM-KLD<br><br>FINDINGS &<br>RECOMMENDATION |
| FX SOLUTIONS, INC.,<br><br>              Plaintiff,<br><br>vs.<br><br>MATTHEW BRENT GOETTSCHE,<br><br>              Defendant. | |

This consolidated action comes before the Court on the following motions:

(1) Defendant Mathew Goettsche's motion to compel arbitration pursuant to

Federal Rule of Civil Procedure 12(b)(3) and Section 3 of the Federal Arbitration

Act ("FAA"), 9 U.S.C. §3 (Doc. 8); (2) Goettsche's motion to stay proceedings

(Doc. 36); (3) Plaintiff Kevin Washington's motion to allow the receiver to sell the assets of CryptoWatt (Doc. 44) and; (4) Goettsche's motion to dismiss count four of Plaintiff FX Solutions, Inc.'s Complaint in the member action pursuant to Rule 12(b)(6) and for dismissal of count five pursuant to Rule 9(b). (Doc. 60).

For the reasons discussed below, the Court recommends that Goettsche's motion to compel arbitration be granted and this matter be stayed pending arbitration pursuant Section 3 of the FAA, 9 U.S.C. § 3. The Court further recommends that the parties' remaining motions be denied without prejudice as moot.

## I.    Background

Goettsche is the majority owner of CryptoWatt Investment Partners, LLC ("CryptoWatt"), and Washington is the minority owner. Through its subsidiary, CryptoWatt owns a Bitcoin mining facility in Butte, Montana.

On or about October 1, 2018, Goettsche, Washington, and two others signed CryptoWatt's Operating Agreement. (Doc. 9-1 at 25). Relevant here, the Operating Agreement contains an arbitration provision which provides, in part, that "[a]ny unresolved controversy or claim arising out of or relating to this Agreement, except as (i) otherwise provided in this Agreement, or (ii) any such controversies or claims arising of either party's intellectual property rights for which a provisional

remedy or equitable relief is sought, shall be submitted to arbitration….." (Doc. 9-1 at § 11.02).

In early December 2019, Goettsche was indicted by a federal grand jury in the United States District Court for the District of New Jersey on charges of conspiracy to commit wire fraud and conspiracy to sell unregistered securities. (Doc. 1-1 at 9). On December 26, 2019, Washington filed his Complaint against Goettsche in Montana Second Judicial District Court. Washington asserts two claims for relief: (1) breach of fiduciary duty and (2) actual and constructive fraud. (Doc. 26). FX Solutions also filed a Complaint against Goettsche on December 26, 2019. FX Solutions alleges four breach of contract claims and one claim for actual and constructive fraud. (2:20-cv-3-BMM-KLD, Doc. 3).

On January 7, 2020, Goettsche removed both cases to this Court based on diversity jurisdiction pursuant to 28 U.S. § 1332. (Doc. 1). The next day, Washington filed an emergency motion asking the Court to appoint a receiver for CrytpoWatt. (Doc. 5). On January 9, 2020, Goettsche filed the pending motion to compel arbitration of Washington's claims in accordance with the terms of the Operating Agreement's arbitration provision. (Doc. 8). Following a hearing on January 10, 2020, presiding Chief United States District Judge Brian Morris granted Washington's emergency motion and appointed a receiver to protect

CryptoWatt's assets. (Doc. 22).

Goettsche filed an unopposed motion to consolidate the two cases, which was granted by order dated January 14, 2020. (Doc. 24). In early February 2020, Goettsche moved to stay the consolidated proceedings while his criminal case is pending in the District of New Jersey based on his Fifth Amendment rights. (Doc. 36). On March 3, 2020, before a ruling on either motion, the parties stipulated to a temporary stay of proceedings in order to focus on settlement negotiations. The parties indicated that they did not intend for their stipulation to affect their ability to litigate issues related to the receivership that might arise during the temporary stay. (Doc. 42). Pursuant to the parties' stipulation, the Court entered an order on March 3, 2020, temporarily staying proceedings until April 22, 2020. (Doc. 43). During the temporary stay, Washington filed a motion asking the Court to give the receiver the power to sell CryptoWatt's assets. (Doc. 44).

The temporary stay expired on April 22, 2020. During a status conference on April 23, 2020, the parties advised the Court that their settlement negotiations had not been successful and agreed to supplemental briefing on the issue of arbitration. (Doc. 64). The parties' supplemental briefing on the issue of arbitration is now complete. Because it is dispositive, the Court begins with Goettsche's motion to

compel arbitration and dismiss or stay these proceedings pursuant to Section 3 of the FAA, 9 U.S.C. §3. (Doc. 8).

## II.    Legal Standards - Arbitration

The Federal Arbitration Act applies to any contract "evidencing a transaction involving commerce," and provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).

Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3). While Section 3 provides for a stay, the court also has the authority to dismiss an action under the FAA where "[t]he language contained in the arbitration provision is sufficiently broad to bar all of the plaintiff's claims."[1]  *Sparling v. Hoffman Const. Co. Inc.*, 864 F.2d 635, 638 (9th

---

[1] Defendant also seeks dismissal based on improper venue as a remedy under Rule 12(b)(3). Because the Court finds for the reasons set forth below that this matter should be stayed pending arbitration under Section 3 of the FAA, the Court need

Cir. 1988) (quoting *Martin Marietta Aluminum, Inc. v. General Electric Co.*, 586 F.2d 143, 147-48 (9th Cir. 1978).

"Generally, 'the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Portland General Electric Co. v. Liberty Mutual Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)). The validity of an arbitration agreement is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (internal quotations omitted) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Because arbitration is a matter of contract, the FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center*, 561 U.S. at 67 (internal citations omitted). Thus, "[t]o evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

---

not consider whether dismissal under Rule 12(b)(3) is warranted.

When presented with a motion to compel arbitration, "the first task of a court ... is to determine whether the parties agreed to arbitrate [their] dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "For 'any arbitration agreement within the coverage of the [FAA],'" this arbitrability determination is made "'by applying the federal substantive of arbitrability.'" *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (quoting *Mitsubishi Motors*, 473 U.S. at 626).

In deciding whether to compel arbitration under the FAA, a court must resolve "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan* 796 F.3d at 1130 (citing *Howsam*, 537 U.S. at 84). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

As a general rule, the question of arbitrability is "an issue for judicial determination." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). However, the "parties may delegate these threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales,*

*Inc.*, 139 S.Ct. 524, 530 (2019). See also *Brennan*, 976 F.3d at 1130 (recognizing that the parties can expressly delegate these gateway issues to the arbitrator if they so do so "clearly and unmistakably"). If there is a valid arbitration agreement, "and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 139 S.Ct. at 529.

## III.   Discussion

Goettsche argues Washington's claims are subject to mandatory arbitration pursuant to the terms of the Operating Agreement. Section 11.02 of the of the Operating Agreement is titled "Arbitration" and provides in relevant part as follows:

> Any unresolved controversy or claim arising out of or relating to this Agreement, except as (i) otherwise provided in this Agreement, or (ii) any such controversies or claims arising out of either party's intellectual property rights for which a provisional remedy or equitable relief is sought, shall be submitted to arbitration by one arbitrator mutually agreed upon by the parties…The arbitration shall take place in Denver, Colorado, USA in accordance with the AAA rules then in effect, and judgment upon any award rendered in such arbitration will be binding and may be entered in any court having jurisdiction thereof.

> (Doc. 9-1 at § 11.02).

The parties do not dispute the validity of this arbitration provision, but disagree on whether it "covers the dispute" that is the subject of this litigation. *Brennan* 796 F.3d at 1130. Goettsche maintains the provision is unambiguously

broad and plainly applies to "[a]ny unresolved controversy or claim arising out of or relating to this Agreement." (Doc. 9-1 at § 11.02).

Washington's first claim for relief alleges breach of fiduciary duty. (Doc. 26 at ¶¶ 11-23). Count I asserts that "[b]eing charged with the crimes alleged in the Indictment and arrested by federal authorities" has made it impossible for Goettsche carry out his duties as CryptoWatt's managing partner, "specifically, pay the operating costs and 'do all things necessary and appropriate to carry on the business and purposes of the Company'" as required by the Operating Agreement. (Doc. 26 ¶ 18, citing § 5.01 of the Operating Agreement.) Washington alleges that "through the conduct described in the Indictment resulting in his arrest and detention pending trial," Goettsche breached his fiduciary duty to Washington, "the minority owner of CryptoWatt." (Doc. 26 at ¶ 19).

Washington's second claim for relief alleges actual and constructive fraud related to CryptoWatt's Bitcoin mining facility. Count II alleges that "[b]y mining the Bitcoin mined at CryptoWatt's Butte facility to the BitClub Pool described in the Indictment" and by "exercising exclusive control over the Bitcoin," Goettsche "was able to obfuscate and hide the true number of Bitcoin mined, and consequently, fraudulently convert Bitcoin from" Washington. (Doc. 26 at ¶ 27).

Goettsche maintains these claims, which include allegations concerning the

business relationship between the parties and the mining facility owned by

CryptoWatt, clearly arise out of and relate to the Operating Agreement. As such,

Goettsche argues, the claims are covered by the Operating Agreement's mandatory

arbitration provision.

Washington does not take issue with the notion that his claims arise out of or

relate to the Operating Agreement, but argues Goettsche overlooks the fact that the

arbitration provision contains broad and clear exceptions to arbitration. By its

terms, the arbitration provision applies "except as (i) otherwise provided in this

Agreement…." (Doc. 9-1 § 11.02). Washington contends that Sections 5.04 and

5.06 of the Operating Agreement provide otherwise, and contain an exception to

arbitration that applies to fraud, deceit, and willful misconduct as alleged in the

Complaint. Section 5.04 addresses "Liability for Certain Acts" and states in part

that "[n]o Managing Member or officer shall be liable to the Company or an

Member unless the loss or damage shall have been the result of such Managing

Member's or officers' fraud, deceit, gross negligence or willful misconduct against

the Company." (Doc. 9-1 at § 5.04). Section 5.06 addresses "Indemnity of the

Managing Member, Officers, Employees, and Other Persons." (Doc. 9-1 at § 5.06).

This section provides in relevant part that CryptoWatt shall "indemnify and hold

harmless each of the Indemnified Parties," which would include Goettsche as the

Managing Member, for activities undertaken on behalf of CryptoWatt, "except for any liability that a court of competent jurisdiction shall have ultimately determined to have arisen from such Indemnified Party's fraud, willful misconduct, gross negligence or intentional breach of its obligations hereunder." (Doc. 9-1 at § 5.06(b)). Washington reads these two sections together as providing an exception to arbitration that would allow this Court to consider his claims and determine liability arising from Goettsche's fraud, deceit, gross negligence, or intentional breach of his obligations under the Operating Agreement.

Washington argues a second applicable exception to arbitration can be found in Section 12.10 of the Operating Agreement, which addresses "Equitable Remedies." Section 12.10 states, in pertinent part, that "in addition to any other remedy to which the parties hereto are entitled at law or in equity…each party hereto shall be entitled…to enforce specifically the terms and provisions hereof in any federal or state court to which the parties have agreed hereunder to submit to jurisdiction." (Doc. 9-1 at § 12.10). Focusing on the reference to remedies at law, Washington contends this provision excepts his claims of fraud and knowing and intentional breaches of fiduciary duties from the Operating Agreement's arbitration requirement.

As Washington acknowledges, he is essentially asking the Court to examine

11

the contractual provisions cited above to determine whether the arbitration clause "encompasses the dispute at issue." (Doc. 65 at 11 (quoting *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011)). In response, Goettsche disagrees with Washington's reading of the Operating Agreement and argues the sections he relies on do not create any applicable exceptions to the arbitration clause. In staking out their respective positions, the parties raise questions about the arbitrability of Washington's claims. See *Howsam*, 537 U.S. at 84 (explaining that "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" is a question of arbitrability).

Goettsche also presents a threshold argument that would prevent the Court from reaching the merits of the dispute over arbitrability. He maintains the parties clearly and unmistakably agreed to delegate gateway arbitrability issues to the arbitrator, which means that the arbitrator, not this Court, must decide whether the arbitration provision applies to Washington's claims. Goettsche relies on the following language in the arbitration section of the Operating Agreement: "The arbitration shall take place in Denver, Colorado, USA, in accordance with the AAA rules then in effect, and judgment upon any award rendered in such arbitration will be binding and may be entered in any court having jurisdiction thereof." (Doc. 9-1 at § 11.02). Because the arbitration provision incorporates "the

12

AAA rules then in effect," Goettsche contends the parties have clearly and

unmistakably delegated the arbitrability issues raised here to the arbitrator. The

Court agrees.

Rule 7(a) of the American Arbitration Association's ("AAA") Commercial

Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his

or her own jurisdiction, including any objections with respect to the existence,

scope or validity of the arbitration agreement or to the arbitrability of any claim or

counterclaim." AAA Commercial Rule 7(a) (effective October 1, 2013). In light of

Rule 7(a), the Ninth Circuit has held that incorporation of the AAA rules

"constitutes clear and unmistakable evidence that contracting parties agreed to

arbitrate arbitrability." *Brennan*, 796 F.3d at 1130. See also *Oracle Am., Inc. v.

Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit

to have considered the issue has determined that incorporation of the American

Arbitration Association's (AAA) arbitration rules constitutes clear and

unmistakable evidence that the parties agreed to arbitrate arbitrability.").

Since *Brennan*, several district courts in the Ninth Circuit have held that

language similar to that set forth in Section 11.02 of the Operating Agreement

constitutes clear and unambiguous evidence that the parties intended to delegate

arbitrability. See e.g. *Weimin Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659

at **1, 4 (W.D. Wash. Aug. 6, 2019) (finding the parties clearly and unmistakably intended to delegate questions of arbitrability where the arbitration agreement stated that "[a]ll controversies, claims, counterclaims, or other disputes…shall be submitted for binding arbitration in accordance with the Rules of the American Arbitration Association ("AAA Rules"); *Mitchell v. Corelogic, Inc.*, 2019 WL 6481306 at **2, 4 (Apr. 9, 2019 C.D. Cal.) (finding clear and unmistakable intent to delegate arbitrability where one of the agreements between the parties provided that disputes "shall be settled by final and binding arbitration in the county of your employment with the Company, in accordance with the applicable rules of the American Arbitration Association"); *Choksi v. Airpush, Inc.*, 2015 WL 12806465 at ** 2, 4 (C.D. Cal. Nov. 4, 2015) (finding clear and unmistakable evidence that the parties intended to delegate the issue of arbitrability where the arbitration agreement stated that "[t]he arbitration shall take place in Los Angeles, California, in accordance with the AAA rules then in effect….")

Here, as in *Brennan* and cases like those listed above, the Court concludes that by agreeing to arbitrate in accordance with the AAA Rules, the parties clearly and unmistakably intended to delegate threshold issues of arbitrability to the arbitrator. In reaching this conclusion, the Court notes that the Ninth Circuit made clear in *Brennan* that its holding "should not be interpreted to require that the

contracting parties be sophisticated or that the contract must be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Brennan*, 796 F.3d at 1030. The Ninth Circuit nevertheless limited its holding to facts of the case, which involved an arbitration agreement between two sophisticated parties – one a bank and the other an experienced attorney and businessman. *Brennan*, 796 F.3d at 1131. Like the plaintiff in *Brennan*, Washington and Goettsche are both sophisticated businessmen who effectively delegated questions of arbitrability to the arbitrator by incorporating the AAA Rules into their agreement to arbitrate.[2]

Unless the parties' "delegation provision is itself unconscionable, the arbitrator and not the Court decides the question of arbitrability." *Brennan*, 796 F.3d at 1132. There is no argument or evidence in the record now before the Court to suggest that the delegation clause is somehow unconscionable. Because the parties have entered into a valid agreement to arbitrate, and the agreement delegates threshold arbitrability questions to an arbitrator by clear and unmistakable evidence, whether the agreement to arbitrate covers the dispute

---

2 Even if an argument could be made that the parties were not sophisticated, the Court would reach the same conclusion. See e.g. *Weimin Chen*, 2019 WL 3564659 at *4 (finding "the greater weight of authority since *Brennnan*…concludes that *Brennan*'s holding also applies to disputes involving non-sophisticated parties).

between the parties must be resolved by the arbitrator. *Henry Schein*, 139 S.Ct. at 529-30. Accordingly, the Court does not reach the merits of Washington's argument that his claims fall within one or more exceptions to the Operating Agreement's arbitration provision and recommends that Goettsche's motion to compel arbitration be granted.

Assuming, as the Court has decided, that Washington's claims must proceed to arbitration, Goettsche argues dismissal is the proper remedy. Alternatively, Goettsche asks the Court to implement a stay pending arbitration pursuant to 9 U.S.C. § 3. Having determined that threshold questions of arbitrability must be addressed by the arbitrator, and because Washington's case has been consolidated with the case brought by FX Solutions, the Court finds that a stay rather than dismissal is the proper remedy here.

Matters are complicated somewhat by the fact that this is a consolidated action, involving not only Washington's claims against Goettsche, but also those brought by FX Solutions in the member case. While Washington's claims must proceed to arbitration, FX Solutions was not a party to the Operating Agreement and Goettsche does not argue that its claims are subject to arbitration. Rather, Goettsche moves for a stay as to all claims, including those presented in the member and lead case, pending the outcome of the District of New Jersey criminal

proceedings. Goettsche argues a stay is necessary to protect his Fifth Amendment rights in the criminal case against him.

Section 3 of the FAA "directs federal district courts to stay proceedings and compel arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Ziober v. BLB Resources, Inc.*, 839 F.3d 814, 817(9th Cir. 2016) (quoting 9 U.S.C. § 3). Where, as here, arbitration is properly compelled as to some claims but not others, whether to stay the entire case pending the outcome of arbitration is "left to the district court…as a matter of discretion to control its docket." *Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc.*, 2020 WL 620294 *12 (C.D. Cal. Jan. 9, 2020) (citing *Simmons v. Morgan Stanley Smith Barney, LLC,* 872 F.supp.2d 1002, 1021 (S.D. Cal. 2012) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 21 n. 23 (1983)).

Having determined that a stay under Section 3 of the FAA is proper as to Washington's claims, the Court finds that this consolidated action should be stayed in its entirety pending the outcome of arbitration. In granting Goettsche's unopposed motion to consolidate, the Court found the two "cases concern similar facts and legal claims and it appears that consolidation is [in] the interests of efficiency and judicial economy." (Doc. 6 at 1). Consistent with the Court's order

consolidating the two cases, and in the interest of avoiding piecemeal litigation, this consolidated action should be stayed pending the outcome of arbitration.

Consequently, the Court need not address Goettsche's motion to stay pending the outcome of the District of New Jersey criminal proceedings. (Doc. 36). Should the arbitrator determine that Washington's claims are covered by the arbitration agreement, additional receivership issues, including those raised in Washington's motion to allow the receiver to sell the assets of CryptoWatt (Doc. 44) may be adjudicated in the underlying arbitration. Finally, Goettsche's motion to dismiss counts four and five of FX Solutions' Complaint should be denied as moot based on the stay of this action pending arbitration, subject to renewal once arbitration is complete and the stay is lifted.

## IV.    Conclusion

For the reasons discussed above,

IT IS RECOMMENDED that Goettsche's motion to compel arbitration (Doc. 8) be granted and this matter be stayed pending arbitration pursuant Section 3 of the FAA, 9 U.S.C. § 3. The Court further recommends that the parties' remaining motions (Docs. 36, 44, 60) be denied without prejudice as moot.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the

parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 3rd day of June, 2020.

Kathleen L. DeSoto
United States Magistrate Judge